UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY ANN MENELEY,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 1:21-cv-00563-TLN-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 22, 25)** |

**I.     Introduction**

Plaintiff Ruby Ann Meneley seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.[1]

**II.    Factual and Procedural Background**

Plaintiff applied for benefits on December 28, 2018, alleging a disability onset date of January 17, 2015[2] due to bipolar disorder, anxiety, and personality disorders. AR 311, 318. The Commissioner denied the applications initially on August 12, 2019, and on reconsideration on October 29, 2019. AR 143–58. Plaintiff appeared for a hearing before an ALJ on December 9, 2020. AR 78–102. The ALJ issued an unfavorable decision on December 22, 2020. AR 13–34.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 7, 15.

[2] As the ALJ noted, this date did not correspond to an injury or other inciting event but was one day after the date the previous ALJ issued a decision denying Plaintiff's previous SSDI claim filed in 2011. AR 16; 103-121.

1

The Appeals Council denied review on February 4, 2021 (AR 2–7) and this appeal followed.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 17, 2015. AR 19. At step two the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease; generalized anxiety disorder; posttraumatic stress disorder; bipolar I disorder; and substance addiction. AR 19. The ALJ also found at step two that Plaintiff had the following non-severe impairments: obesity; history of left foot burn; gastroesophageal reflux disorder (GERD); and hypertension. AR 19.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19–20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) with postural and environmental limitations not at issue, and the following non-

exertional limitations: cannot interact with the general public; can have occasional superficial interaction with coworkers and supervisors; can understand, remember, and carry out simple and routine tasks that may entail detailed but uninvolved instructions; and, can frequently operate a motorized vehicle. AR 21–26.

At step four the ALJ found that Plaintiff could not perform her past relevant work as a cashier. AR 26. At step five, in reliance on the Vocational Expert's testimony, the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: binder, lamination assembler and spool winder. AR 27. The ALJ therefore concluded that Plaintiff was not disabled since the alleged onset date of January 17, 2015. AR 27.

## V.     Issue Presented

Despite Plaintiff's introductory contention that the ALJ failed to properly assess her substance abuse under SSR 13-2-P (MSJ at 3, Doc. 22), Plaintiff did not specifically revisit that issue but rather asserted two distinct claims of error: 1- "The ALJ erred by failing to properly consider Plaintiff's subjective complaints as required by the Agency's regulations and rulings and failing to develop the record;" and, 2- "The ALJ erred in finding that Plaintiff has moderate deficits in concentration, persistence, and pace, but failed to include those limitations in Plaintiff's residual functional capacity." MSJ at 4–5, Doc. 22.

### A.     RFC Generally; Subjective Complaints; Development of the Record

#### 1.     Applicable Law

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p. In doing so, the ALJ must determine credibility, resolve conflicts in

medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

### 2. Analysis

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her testimony concerning her symptoms, including: 1- inability to take public transportation or continue working as a cashier due to panic attacks which were sometimes so severe that they resulted in hospital visits (MSJ at 3, citing AR 89); 2- inability to be around groups of people due to paranoia thinking that they were talking about her and conspiring against her (*Id.*, citing AR 89); 3- hearing voices, especially a little girl asking for water (AR 89); 4- that she experienced these symptoms despite taking antipsychotics, anxiety medication and mood stabilizers (AR 90); 5- that she was two years clean from methamphetamine use (AR 92); 6- that she could not go to the grocery store without her social worker (AR 92); that she rarely left her home but cleaned periodically throughout the day and slept due to her medications (AR 94); and 7- that she

experienced daily anxiety episodes and panic attacks even when home alone (AR 96).

The Ninth Circuit has explained that an ALJ can rely on a claimant's daily activities as a basis for discrediting [her] testimony if: (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

At the outset, it is notable that the ALJ did not reject all or most of Plaintiff's symptom reports despite the ALJ's use of standardized language finding "the record generally does not support the claimant's statements concerning the alleged intensity, persistence and limiting effects of these symptoms." AR 22. For example, as noted above, Plaintiff testified to social anxiety-- fear of public places and large groups due to panic attacks and paranoia-- and reasonably commensurate with that testimony the RFC limited Plaintiff to only occasional superficial interaction with peers and supervisors and no interaction with the general public. AR 21. Importantly, the testimony did not establish an inability to interact with anyone under any circumstances.

Plaintiff also testified she experiences daily panic attacks even when home alone (AR 96), but separately testified that she prepares her own meals, does the dishes and cleans throughout the day, albeit with breaks. despite her symptoms. This supports the RFC that she can perform simple work if performed in relative isolation as these symptoms did not prevent her from performing the household work as described above. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (noting that the RFC represents "the most you can still do despite your limitations.").

Plaintiff contends the ALJ mischaracterized and selectively picked evidence concerning her ability to grocery shop, complete function reports, take medications without reminders, handle money, care for a woman with dementia, use Facebook, and play with her grandchildren. MSJ at

5–6 (citing AR 24).   As to grocery shopping, Plaintiff's point is reasonably well taken as the testimony was clear that she needed her social worker to accompany her until about two months prior to the hearing.  AR 94.  Plaintiff's daughter also corroborated that Plaintiff would only make quick trips if she really needed something.  AR 373.

As for the completion of function reports, in a sense it is a somewhat questionable for the agency to request that a claimant complete a simple form describing their function and limitations, and then use the mere act of completing it as suggestive of adequate work-related functionality.  Notwithstanding, no matter how one perceives this practice it is insignificant to the resolution of this case.

Next, the ALJ's reference to Facebook "use" is non-specific.  Although such use can be somewhat task oriented, such as composing or commenting on posts, messaging other users, and uploading photos, it can also be quite passive.

Plaintiff next contends that the record doesn't support that she played with her grandchildren contrary to the ALJ's assertion.  But even if so, the RFC nevertheless adequately captures Plaintiff's social limitations as discussed above.

As for the caring for an elderly woman with dementia, Plaintiff emphasizes that the woman and her son were emotionally abusive and that Plaintiff only cared for her to avoid homelessness, facts which Plaintiff contends the ALJ ignored.  MSJ at 6, citing AR 615.  As unfortunate as this circumstance is stated to be, Plaintiff's motivation for caring for the woman and the way she was treated do not undermine the fact that carrying for the woman does demonstrate a reasonable degree of functionality.   Further, the cited record indicates that she cared for the women for 10 years which suggests that she was able to persist despite being in a challenging working environment, and despite the anxiety she experiences when interacting with others.

On balance, the ALJ's discussion of Plaintiff's ADLs do reasonably support that Plaintiff's symptoms were not as limiting as alleged. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

In the penultimate paragraph of Plaintiff's first argument section, Plaintiff contends as follows:

> The ALJ cherry-picked sporadic, benign findings in an attempt to discredit Plaintiff's symptom testimony. The evidence shows that Plaintiff has had mental health hospitalizations, took anti-psychotics, and frequently experienced hallucinations, but the ALJ chose to ignore all of that because Plaintiff can occasionally grocery shop and feed herself. This is complete mischaracterization of the evidence and warrants remand.

MSJ at 7.

However, the ALJ did not ignore evidence concerning Plaintiff's hospitalizations, but explained as follows:

> On May 20, 2020, the claimant was admitted for in-patient care for being a danger to herself and her sister. However, following treatment with medication and therapy, her mood had improved and stabilized on discharge. She was discharged on June 5, 2020, with a diagnosis of bipolar disorder depressed episode with psychotic features (Ex. B5F). In July 2020, the claimant was admitted for suicidal ideation from a few days earlier when she stated she had stood on a train track waiting for a train to hit her but one never came (Ex. B6F/15; B8F/1). A requested mental status examination did mention poor eye contact and that the claimant was homeless and angry at her sister for not letting her live with her, but noted she was alert and orientated, not obviously responding to internal stimuli, did not seem distracted, and her grooming appeared adequate (Ex. B8F/5). The examination after she had eight hours sleep and ate was unremarkable (Ex. B8F/14). She improved upon discharge following treatment (Ex. B8F/26, 33).

AR 23–24.

Nor did the ALJ ignore evidence concerning Plaintiff's anti-psychotic use, but specifically

noted "She mentioned having missed 1.5 weeks of taking her Zyprexa[3] and indicted that that 'she now realize[d] what it does for her and will not miss it anymore' (Ex. B2F/87)." AR 23 (citing AR 626).

Additionally, the ALJ did not ignore evidence concerning Plaintiff's recurrent hallucinations as he referenced them on five different occasions among the psychiatric treatment records, the therapy progress notes, and the hearing testimony as follows: *See* AR 21 (noting "auditory hallucinations, and anxiety when around people . . ."); AR 21 (noting "the claimant asserted she is unable to work because of anxiety . . . and hallucinations (auditory and visual)."); AR 22 (describing Plaintiff's hearing testimony that she "hears voices calling her name or a little girl asking for a cup of water."); AR 22 ("Despite some ongoing reported depression, hopelessness, and anxiety primarily due to situational stressors, auditory hallucinations, paranoia, and passing thoughts of self-harm with no intent or plan to follow through, these longitudinal records do not support a debilitating inability to function.") (emphasis added); AR 22 (noting a June 2015 examination was remarkable for "depressed, anxious mood and auditory hallucinations" but otherwise unremarkable.").

The ALJ went on to discuss inpatient hospital stays, outpatient psychiatric examinations, and therapy progress notes dated June 2015, June 2017, January 2018, March 2018, June 2018, August 2018, October 2018, December 2018, January 2019, February 2019, May 2019, June 2019, August 2019, November 2019, December 2019, May 2020, June 2020, July 2020. AR 21–24. As the ALJ noted, these records routinely noted mood abnormalities including tearful, depressed, and anxious mood wherein the ALJ acknowledged three instances of same (*See* AR 22–23 citing Ex. B2F/9-10, 22–23; Ex. B4F/9); she displayed concealed and/or poor eye contact

---

[3] The cited record essentially states that Plaintiff somehow *was unable to return to get her meds*, so she missed 1.5 weeks of Zyprexa (see, AR 626). This seemingly references an unspecified obstacle she encountered to obtaining the medication as opposed to a conscious decision to take herself off the medication against medical advice.

wherein the ALJ acknowledged two instances of same (*See* AR 24 citing Ex. B8F/5; Ex. B2F/22-23). Plaintiff also presented on multiple occasions with suicidal ideation with and without suicidal plans or actions including self-harm and standing on a train track, which again the ALJ acknowledged (*See* AR 23 citing Ex. B2F/16; Ex. B6F/15; B8F/1). Further, the ALJ acknowledged that Plaintiff was noted to have impaired judgment on at least one occasion (Ex. B2F/22-23).

The ALJ also cited records reflecting numerous and varied benign findings, including: 1- unremarkable/clean appearance and/or adequate grooming (5 instances); 2- cooperative behavior (3 instances); 3- good eye contact (3 instances); 4- alert and fully oriented (3 instances); intact cognition or cognitive function (4 instances); normal abstraction (2 instances); normal or clear speech (3 instances); good insight (2 instances); good judgment (3 instances). AR 22–24 (citing (Ex. B2F at 9–10, 22–23, 51–52, 59, 66); AR 548–49; 561–62; 590–91; 598; 605)

In addition to these mental status examination findings that the ALJ identified from specific appointments through the end of 2019, the ALJ closed the discussion of that evidence with a string citation to an extensive list of similar findings explaining that "The longitudinal examinations at Merced County Mental Health repeatedly note the claimant is alert and fully orientated with good eye contact, normal speech, intact judgment/insight, and intact cognition to conversation. (Ex. B2F/71-72, 74, 76, 80-81, 87-88; B4F/11; B7F/1, 7-8, 10-11)." *Id.* (citing AR 610–11; 613; 619–20; 626–27; 686; 880; 886–87; 889–90).

Finally, the ALJ tied the findings summarized above to the related functional areas finding no more than moderate limitations in each area as follows: 1- with respect to understanding/remembering/applying information, "Examinations repeatedly note the claimant has intact cognition to conversation and intact judgment,"; 2- with respect to interacting with others, "Examinations repeatedly note the claimant is cooperative with good eye contact,"; 3-

11

with respect to concentration/persistence/pace, "Examinations repeatedly note the claimant is alert and fully orientated."; and 4- with respect to adaption/self-management, "Examinations repeatedly note the claimant has intact insight, which tends to reflect an ability to manage her psychological based symptoms." AR 24.

Plaintiff fails to offer examples of the ALJ's allegedly insufficient factual discussion, or any other detail to substantiate her contention that the ALJ relied on sporadic benign findings at the expense of abnormal findings. Here, the ALJ not only recited representative, if not exhaustive, examples of abnormal and benign findings alike, but provided a generalization about what the weight of the examinations demonstrated on balance connecting the examination findings to the functional categories to which they relate. As a result, the ALJ successfully "bridge[d] the analytical gap" between factual recitation and legal conclusions. In the end, the RFC finding was supported by substantial evidence as it was sufficiently grounded in the medical evidence and Plaintiff's reported activities of daily living.

Going on, in the final paragraph of her first argument, Plaintiff contends that "the ALJ erred by relying on his own lay estimation of Plaintiff's functioning based upon his own interpretation of the raw clinical data." MSJ at 8. In support of this argument Plaintiff cites non-controlling caselaw, none of which states in so many words that mental status examination findings, such as appearance, mood, alertness, thought content, eye contact, and speech pattern, are akin to "raw clinical data" unsusceptible to a layperson's understanding. Thus, to the extent Plaintiff's argument here pertains to the gap in time between the agency's review at the initial/reconsideration determination levels and the hearing before the ALJ, claimants routinely continue pursuing medical care during that time and in turn generating new medical records. *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social

Security regulations impose no limit on such a gap in time."). Moreover, an ALJ is nearly always tasked with independently reviewing some medical evidence that post-dates the agency consultant's review at the initial and reconsideration levels and then forming conclusions about their functional significance. That is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Plaintiff adds in her reply brief that the ALJ's duty to develop the record with "new opinion evidence" was further triggered because that evidence established a worsening of her impairments which the ALJ characterized as a "material" change in circumstances, again reiterating that the records were unsusceptible to a lay understanding. Reply at 3-4, Doc. 26.

It is of some note that the nuance Plaintiff added in her reply brief was absent from the discussion provided in her initial brief. However, the argument is still not adequately developed as Plaintiff offers no explanation as to how this evidence is unsusceptible to a layperson's understanding, or how her condition allegedly worsened between the time of the PAMFs and the hearing.[4] Here, the ALJ's departure from the PAMFs was in finding that Plaintiff had <u>moderate limitations</u> as to concentration/persistence/pace, whereas the PAMFs <u>found no such limitation</u> (AR 139). Thus, the ALJ's rejection thereof could not and did not disadvantage Plaintiff. Further, Plaintiff's second claim discussed below is in fact predicated on her contention that the ALJ failed to adequately incorporate that moderate limitation in the RFC. Significantly, the PAMFs found no such limitation.

---

[4] The ALJ's reference to a material "change in circumstances" was little more than a recycling of language the ALJ used earlier to explain why the ALJ was rejecting the PAMFs insofar as the PAMFs applied the *Chevez* presumption of continuing non-disability and adopted the ALJ's RFC from the <u>prior SSDI</u> claim that Plaintiff filed in 2011 and was denied by ALJ decision dated January 16, 2015. AR 103–121. Here, the ALJ rejected the PAMFs finding that the *Chevez* presumption of continuing non-disability was indeed rebutted based on a material change in circumstances <u>between the two SSDI claims</u>. AR at 16 (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)). The ALJ used the same language again in subsequently explaining that the agency doctors who issued the PAMFs did not have access to medical evidence that postdated their review, which again is nearly always the case. AR 25.

13

### B. Moderate Limitations in Concentration, Persistence, and Pace

#### 1. Applicable Law

In performing the psychiatric review technique (PRT), the agency evaluates the claimant's functionality in four broad areas of mental functioning known as the "paragraph B" criteria. Per the regulations, "when we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R § 416.920a(c)(4). The existence of two marked limitations or one extreme limitation satisfies listing 12.15 and is per se disabling, whereas an impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).

Moderate limitations lie in the middle of that spectrum with no controlling authority directly addressing the impact of these limitations on the disability determination. "SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'" *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental))

Other courts have noted that "[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"). *McLain v. Astrue*, 2011 WL 2174895, *6 (C.D. Cal. 2011).

Even though moderate limitations are not per se disabling, courts have often found they must be incorporated in the RFC. *See, e.g. Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of

14

moderate limitations, those limitations must be accounted for in the RFC."); (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013). "This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" *Wascovich*, 2019 WL 4572084 at *5.

Courts have occasionally relied on the Ninth Circuit's opinion in *Stubbs-Danielson* for the proposition that a limitation to simple and routine tasks can serve as a catchall for moderate mental limitations insofar as *Stubbs* held that an ALJ appropriately translated concentration limitations into "the only concrete restrictions available to him," namely a limitation to simple tasks. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

The case law in this circuit is split but perhaps marginally favors the view that a restriction to simple/routine tasks is not necessarily all-encompassing.[5]

### 2. **Analysis**

Here, the ALJ found as follows with respect to the four categories of mental functioning considered in the psychiatric review technique (PRT):

1. Understanding/remembering/applying information: no limitation
2. Interacting with others: moderate limitation

---

[5] *See Macias v. Saul,* No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple/routine tasks does not account for moderate limitations in maintain attendance and completing an 8-hour workday); (*Wascovich*, 2019 WL 4572084 at *5 (E.D. Cal. Sept. 20, 2019) (simple and routine task limitation does not account for moderate limitations in maintaining attendance); *Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision); *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress); *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020 WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020); *Flores v. Saul*, No. 1:18-CV-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020); but see *Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, complete a normal workday/workweek without interruptions, and moderate to serious limitations in her ability to deal with work stress); Calisti v. Colvin, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015); *Schmidt v. Colvin*, No. 2:12-cv-00016-KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013).

3.  Concentration, persistence, and pace: moderate limitation

4.  Adapting and managing oneself: no limitation

As a result, the ALJ formulated an RFC which provides that Plaintiff can, "understand, remember, and carry out simple and routine tasks that may entail detailed but uninvolved instructions," and that she can have occasional superficial interaction with co-workers and supervisors, and no interaction with the general public.  AR 21.

Plaintiff contends this RFC did not account for moderate limitations in concentration, persistence, and pace.  Post-*Stubbs Danielson* caselaw provides no clear answer as to whether the ubiquitous RFC restriction to simple and routine tasks accounts for moderate limitations in concentration, persistence, and pace.  Similarly, there is no clear guidance, much less controlling guidance, from the social security rules, regulations, and interpretive case law on how such a limitation ought to be incorporated in the RFC.

 Plaintiff emphasizes that "Given that the VE testified that <u>off-task behavior in excess of 10%</u> would be work preclusive, <u>a preclusion on quotas</u> would be work preclusive, and <u>absenteeism in excess of once per month</u> would be work preclusive, the ALJ's failure to account for this moderate limitation is harmful legal error warranting remand."  MSJ at 10 (citing AR 101) (emphasis added).  This suggests that where an ALJ makes a finding of moderate limitations in concentration/persistence/pace, the RFC must specify: 1- a percentage of off-task behavior; 2- a prohibition on quotas; and 3- the number of days of absenteeism.  Plaintiff identifies no support for this, nor that >10% off task behavior is the correct percentage to account for moderate limitations in the area of concentration/persistence/pace.  This was simply the work-preclusive threshold of off-task behavior identified by the VE.  If moderate concentration limitations necessarily implied >10% off task behavior, moderate concentration limitations would automatically be work preclusive, which again goes against the weight of authority as set forth

16

above.

Therefore, there is no compelling basis to remand this case on this claim of error absent a statement by any treating, examining, or non-examining source that Plaintiff has more than moderate limitations in any category of mental functioning, especially where the ALJ's RFC formulation reflects: 1- a restriction to simple and routine tasks, 2-to only occasional superficial interaction with supervisors and peers, and 3- with no interaction with the general public.  These restrictions reasonably accounted for Plaintiff's mental functional limitations here.

**VI.   Recommendations**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 22) be **DENIED.**

2. That Defendant's cross-motion (Doc. 25) be **GRANTED.**

3. That the decision of the Commissioner of Social Security be **AFFIRMED**.

4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Ruby Ann Meneley.

**VII.   Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 3, 2024**                             **/s/ Gary S. Austin**
                                                                          UNITED STATES MAGISTRATE JUDGE